UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**RAQUEL ANDERSON,**

      Plaintiff,

v.                                                          Case No. 2:25-cv-12839
                                                            Hon.

**NREG US HOLDINGS, LTD**
**d/b/a PIRATES COVE SELF STORAGE,**

      Defendant.

_____/

SOMMERS SCHWARTZ, P.C.
Tad T. Roumayah (P74081)
Nathan A. Robbins (P87794)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
troumayah@sommerspc.com
nrobbins@sommerspc.com

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Raquel Anderson ("ANDERSON"), by and through

her attorneys, Sommers Schwartz, P.C., and for her Complaint against Defendant,

NREG US Holdings, LTD d/b/a Pirates Cove Self Storage (hereinafter referred to as

"PIRATES COVE"), states as follows:

1

## PARTIES

1.      Plaintiff, ANDERSON, is an individual who resides in the City of Luna Pier, Monroe County, State of Michigan.

2.      Defendant, PIRATES COVE, is incorporated in the State of Michigan and maintains its principal place of business in the Township of Grosse Ile, Wayne County, State of Michigan.

## JURISDICTION

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

5.      This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan and employed Plaintiff and other individuals within the state of Michigan.

6.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, conducts business in this District, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

2

## GENERAL ALLEGATIONS

7.   ANDERSON is a forty-five-year-old hardworking woman and diligent employee.

8.   ANDERSON began her employment with PIRATES COVE on August 4, 2022 as its Assistant Manager.

9.   At all times, ANDERSON performed her position in an exemplary manner.

10.   PIRATES COVE never provided ANDERSON with any write-ups, warnings, or discipline.

11.   While at PIRATES COVE, ANDERSON reported to Ashley Dunbar (Manager).

12.   ANDERSON worked at two self-storage facilities operated by PIRATES COVE throughout her employment: Pirates Cove Self Storage Monroe (North) (hereinafter the "North location") and Pirates Cove Self Storage Monroe (South) (hereinafter the "South location")

13.   Throughout ANDERSON's employment, ANDERSON primarily worked alone.

14.   Nevertheless, ANDERSON would receive periodic visits to her work locations from Fred Lang (Maintenance Worker).

15.     Beginning early in ANDERSON's employment, Mr. Lang made crude and inappropriate sexually harassing remarks about ANDERSON's appearance, her clothing, and her body.

16.     On one occasion, Mr. Lang remarked that ANDERSON should "wear a bikini and stand outside [on Telegraph road]" in order to bring in customers.

17.     Mr. Lang often leered at ANDERSON and stood uncomfortably close to her during their interactions.

18.     On multiple occasions, ANDERSON reported Mr. Lang's inappropriate behavior to Ms. Dunbar.

19.     In or about July 2024, ANDERSON visited PIRATES COVE's South location.

20.     During her visit, the South location was closed.

21.     Upon arriving, ANDERSON found the bathroom staged with a sex toy placed on a shelf, paper towels arranged to dry, and a fan running.

22.     ANDERSON photographed the bathroom.

23.     ANDERSON sent the photographs to Ms. Dunbar.

24.     Later that day, Mr. Lang confessed to ANDERSON that he had staged the bathroom as a "prank" intended for ANDERSON.

25.     Mr. Lang admitted that ANDERSON arrived "too early" and "ruined [the prank]."

4

26.     ANDERSON reported Mr. Lang's disturbing behavior to Ms. Dunbar.

27.     Furthermore, ANDERSON advised that she feared Mr. Lang had been masturbating at work.

28.     In or about July 2024, Mr. Lang informed ANDERSON that he had found a tote full of pornographic materials in a storage unit.

29.     Mr. Lang stated that he placed the pornographic materials in his work truck.

30.     Moreover, Mr. Lang claimed he intended to store the pornographic material in PIRATES COVE's company-retained storage unit.

31.     Shortly thereafter, ANDERSON contacted Ms. Dunbar and reported Mr. Lang's inappropriate behavior.

32.     Upon reporting Mr. Lang's retention of pornographic materials, ANDERSON also requested an update from Ms. Dunbar regarding Mr. Lang's earlier conduct of placing a sex toy in a PIRATES COVE bathroom as a "prank" aimed towards ANDERSON.

33.     Ms. Dunbar responded that she had spoken with Mr. Lang regarding the incident and that she "assumed all was well" because Mr. Lang claimed (falsely) that he and ANDERSON had discussed and both "laughed about it."

34.     ANDERSON advised that at no point had she laughed about Mr. Lang's inappropriate and sexually harassing behavior.

35.     ANDERSON advised that she remained extremely uncomfortable with Mr. Lang and his sexually harassing behavior.

36.     Ms. Dunbar promised ANDERSON that she would ensure Mr. Lang did not work at the same location as ANDERSON unless Ms. Dunbar would also be present.

37.     Two days later, Mr. Lang arrived to ANDERSON's work location without Ms. Dunbar present.

38.     On numerous occasions thereafter, PIRATES COVE forced ANDERSON to work alone with Mr. Lang.

39.     While working with ANDERSON, Mr. Lang continued making sexually inappropriate comments.

40.     During the following months, Ms. Dunbar established her own office at the North location.

41.     Ms. Dunbar consistently left her office door open.

42.     ANDERSON's office was positioned directly across the hallway from Ms. Dunbar's office.

43.     Mr. Lang began spending a substantial amount of his time in Ms. Dunbar's office.

44.     On or about February 19, 2025, ANDERSON walked past Ms. Dunbar's open office.

45.     Upon looking into Ms. Dunbar's office, ANDERSON observed Mr. Lang at Ms. Dunbar's desk.

46.     At that time, Mr. Lang had his pants and his underwear lowered around or below his knees.

47.     At that time, Mr. Lang had Ms. Dunbar's laptop open.

48.     At that time, Mr. Lang's hands were positioned in a manner such that he was masturbating.

49.     ANDERSON ran towards the office kitchen and, from down the hall, asked Mr. Lang why his pants and underwear were lowered around or below his knees.

50.     Mr. Lang yelled towards ANDERSON claiming his legs were "itchy."

51.     Mr. Lang further yelled towards ANDERSON "There – they're up now! Are you happy?"

52.     Mr. Lang then began shouting obscenities at ANDERSON.

53.     Immediately thereafter, ANDERSON called Ms. Dunbar who did not answer.

54.     Soon thereafter, Ms. Dunbar returned ANDERSON's call.

55.     While speaking with ANDERSON, Ms. Dunbar told ANDERSON that Mr. Lang had already contacted her (Ms. Dunbar).

56.     Ms. Dunbar further advised that Mr. Lang claimed he had been injured and left work early.

57.     ANDERSON described to Ms. Dunbar what she had observed, including that Mr. Lang had been nude in Ms. Dunbar's office while looking at Ms. Dunbar's laptop.

58.     During their communications, Ms. Dunbar instructed ANDERSON to review the browser search history and any recently accessed documents on her laptop.

59.     Ms. Dunbar's instructions were given with the intention of determining what content Mr. Lang had been viewing while unclothed.

60.     In particular, Ms. Dunbar expressed her hope that Mr. Lang had not been viewing any .JPEG files (i.e., images saved to Ms. Dunbar's laptop).

61.     ANDERSON could not determine what Mr. Lang had been viewing as the search history on Ms. Dunbar's laptop had been deleted.

62.     During a phone call with ANDERSON, Ms. Dunbar requested that ANDERSON prepare a brief written statement describing Mr. Lang's actions.

63.     While requesting that ANDERSON provide a brief written statement, Ms. Dunbar repeatedly stressed that ANDERSON's written statement did not need to provide extensive details.

64.     ANDERSON followed Ms. Dunbar's directive and provided a brief written statement to Dunbar.

65.     During another phone call later that day, Ms. Dunbar informed ANDERSON that Mr. Lang offered to not return to work if ANDERSON felt uncomfortable.

66.     Later that day, Ms. Dunbar claimed that Mr. Lang would not be returning to work.

67.     On or about February 20, 2025, Ms. Dunbar reiterated that Mr. Lang would not return to work and advised that PIRATES COVE would search for new maintenance staff.

68.     That same day, ANDERSON and Ms. Dunbar met to discuss Mr. Lang's conduct.

69.     During their conversation, ANDERSON informed Ms. Dunbar of other sexually inappropriate conduct which she had observed Mr. Lang engage in.

70.     Specifically, ANDERSON reported to Ms. Dunbar that Mr. Lang had previously commented on ANDERSON's eleven-year-old daughter, claimed ANDERSON's minor daughter was "hot," and asked whether her daughter "used tampons."

71.     Ms. Dunbar expressed concern that Mr. Lang was a sexual predator and, possibly, a pedophile.

9

72.     Further, Ms. Dunbar expressed concern that, on February 19, Mr. Lang had been masturbating to pictures of her (Ms. Dunbar) or pictures of her (Ms. Dunbar's) eight-year-old daughter.

73.     ANDERSON acknowledged Ms. Dunbar's concern and asked Ms. Dunbar if she had noticed that the screen saver on Mr. Lang's cell phone was a picture of Ms. Dunbar's daughter in a leotard.

74.     Ms. Dunbar advised that she knew Mr. Lang's screen saver image was a picture of her, Dunbar's, daughter in a leotard.

75.     Ms. Dunbar admitted that she believed Mr. Lang's possession of the image of her daughter was inappropriate.

76.     Ms. Dunbar noted that she had discussed Mr. Lang's screen saver with her father and that he also believed Mr. Lang's conduct to be inappropriate.

77.     On February 21, Ms. Dunbar inexplicably advised that Mr. Lang would not be terminated and, instead, PIRATES COVE planned to suspend him.

78.     Specifically, Ms. Dunbar stated: "Fred is suspended until we can resolve it in a way that feel [sic] is necessary . . . at a minimum [PIRATES COVE] would ensure Fred would not work with you anymore."

79.     In response, ANDERSON requested a copy of PIRATES COVE's sexual harassment policy, indicated she wished to speak with the company's human resources department ("HR"), and requested contact information for HR.

80. Ms. Dunbar stated that Brandon Vargo (Regional Manager) served as PIRATES COVE's Director of Human Resources and provided Mr. Vargo's email address.

81. ANDERSON reported Mr. Lang's sexually inappropriate and offensive conduct to Mr. Vargo.

82. Thereafter, Mr. Vargo and Ms. Dunbar met with ANDERSON to further discuss Mr. Lang's conduct.

83. Upon Mr. Vargo's arrival at the meeting, Mr. Vargo immediately and inexplicably announced that he would "take an aggressive tone" with ANDERSON.

84. Mr. Vargo did take an aggressive and hostile tone while speaking with ANDERSON.

85. Before beginning the discussion of Mr. Lang, Mr. Vargo instructed Ms. Dunbar to audio record the conversation.

86. Throughout the meeting, Mr. Vargo repeatedly instructed Ms. Dunbar to stop recording the conversation and would then selectively instruct her to reinitiate the recording.

87. During the meeting, ANDERSON described Mr. Lang's conduct on February 19, 2025.

88. Moreover, ANDERSON recalled and described Mr. Lang's past inappropriate sexual conduct, including placing a sex toy in the bathroom at work.

11

89.     ANDERSON expressed fear that PIRATES COVE would require her to work with Mr. Lang again.

90.     ANDERSON explained that she believed Ms. Dunbar had failed, and would continue to fail, to discipline Mr. Lang because of their personal relationship.

91.     Mr. Vargo claimed that he had no knowledge of the July 2024 "sex toy" incident.

92.     Mr. Vargo claimed that Ms. Dunbar had never mentioned the July 2024 "sex toy" incident to him.

93.     Mr. Vargo advised that he had not yet spoken with Mr. Lang, however, he assured ANDERSON he would "not tolerate anymore" inappropriate sexual conduct from Mr. Lang.

94.     At the conclusion of the meeting, Mr. Vargo advised that he would prepare a document indicating that ANDERSON felt "satisfied" with PIRATES COVE's actions concerning Mr. Lang's conduct, including the February 21, 2025 meeting.

95.     Mr. Vargo indicated that ANDERSON was required to sign the written document.

96.     ANDERSON clearly and explicitly informed Mr. Vargo that she was not satisfied with PIRATES COVE's actions concerning Mr. Lang's conduct.

97.    On or about the week of March 10, 2025, Mr. Vargo met with ANDERSON again.

98.    Mr. Vargo presented ANDERSON with a document for her signature.

99.    The document, if signed, would have prohibited ANDERSON from discussing the February 19, 2025 incident further.

100.    Verbally, Mr. Vargo further advised that ANDERSON could not use the term "sexual harassment" when discussing the events of February 19, 2025.

101.    ANDERSON stated she would need to consult with legal counsel before signing the document.

102.    On or about the week of March 24, 2025, PIRATES COVE terminated ANDERSON's employment.

103.    At that time, PIRATES COVE refused to provide a reason for ANDERSON's termination.

104.    On or about May 22, 2025, ANDERSON, through her counsel, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

105.    On or about June 18, 2025, the EEOC issued ANDERSON a Notice of

Right to Sue.

## COUNT I: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT II: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

106.    ANDERSON incorporates Paragraphs 1 through 105 of this Complaint.

107.    Title VII and the ELCRA prohibit employers from discriminating

against any individual because of or on the basis of sex. 42 U.S.C. § 2000e-2(a)(1);

MCL § 37.2202(a).

108.    PIRATES COVE is an employer under Title VII and the ELCRA. 42

U.S.C. § 2000e(b); MCL § 37.2201(a).

109.    To establish a claim for hostile work environment sexual harassment

under Title VII, a plaintiff must prove: 1) the employee is a member of a protected

class, 2) the employee was subject to unwelcomed sexual harassment, 3) the

harassment was based on the employee's sex, 4) the harassment created a hostile

work environment, and 5) the employer failed to take reasonable care to prevent and

correct any sexually harassing behavior. *Bowman v. Shawnee State Univ.*, 220 F.3d

456, 462 (6th Cir. 2000).

110.   Under the ELCRA: "Discrimination because of sex includes sexual harassment" and "[s]exual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions … the conduct or communication has the purpose or effect of substantially interfering with an individual's employment." MCL § 37.2103(k)(iii).

111.   ANDERSON is a woman and a member of a protected class based on her sex.

112.   ANDERSON was repeatedly subjected to egregious and unwelcome sexual harassment based on her sex, which sexual harassment includes but is not limited to:

   a. Crude and inappropriate remarks by Mr. Lang regarding her appearance, her clothing, and her body.

   b. Mr. Lang standing uncomfortably close to ANDERSON.

   c. Mr. Lang leering at ANDERSON.

   d. Mr. Lang staging a bathroom with a sex toy to "prank" ANDERSON.

   e. Mr. Lang discussing pornographic materials with ANDERSON.

   f. Mr. Lang commenting on ANDERSON's minor daughter's appearance and use of feminine hygiene products.

      g.  Mr. Lang being in a state of undress in open view of ANDERSON.

      h.  Mr. Lang masturbating in open view of ANDERSON.

      i.  Mr. Lang otherwise directing unwelcome comments of an offensive and sexual nature at ANDERSON and creating a hostile work environment for ANDERSON.

113.   At all times, the sexual harassment PIRATES COVE subjected ANDERSON to was severe and pervasive and did substantially interfere with ANDERSON's employment at PIRATES COVE.

114.   PIRATES COVE violated ANDERSON's civil rights under Title VII and the ELCRA by subjecting her to unwelcome, offensive, and sexually harassing conduct that was perpetrated upon ANDERSON by her coworker.

115.   PIRATES COVE had knowledge of the sexual harassment ANDERSON experienced and failed to take care to prevent or correct the sexual harassment.

116.   Instead, PIRATES COVE terminated ANDERSON's employment.

117.   As a direct and proximate result of PIRATES COVE's violations of Title VII and the ELCRA, ANDERSON has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish, mental and emotional distress, loss of professional reputation, and punitive damages, attorneys' fees, costs, and interest.

**WHEREFORE**, Plaintiff requests that this Court enter its Judgment against Defendant in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT IV: RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

118. ANDERSON incorporates Paragraphs 1 through 105 of this Complaint.

119. Title VII prohibits an employer from retaliating or discriminating against an employee because the employee has opposed an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a).

120. The ELCRA prohibits a person from retaliating or discriminating against an individual because the individual has opposed a violation of the ELCRA. MCL § 37.2701(a).

121. PIRATES COVE is an employer under Title VII and the ELCRA. 42 U.S.C. § 2000e(b); MCL § 37.2201(a).

122.    It is a violation of Title VII and the ELCRA for an employer to subject an individual to a hostile work environment containing sexual harassment. 42 U.S.C. § 2000e-2(a)(1); MCL § 37.2202(a).

123.    PIRATES COVE violated Title VII and the ELCRA when it subjected ANDERSON to a hostile work environment containing sexual harassment.

124.    ANDERSON opposed PIRATES COVE's violations of Title VII and the ELCRA by making repeated complaints of and reports concerning Mr. Lang's sexually harassing conduct to PIRATES COVE and its employees, including Ms. Dunbar and Mr. Vargo.

125.    At all relevant times, PIRATES COVE had a duty under Title VII and the ELCRA not to retaliate or discriminate against ANDERSON because of her opposition to PIRATES COVE's violations of Title VII and the ELCRA.

126.    PIRATES COVE violated ANDERSON's civil rights by retaliating against ANDERSON for her opposition to PIRATES COVE's violations of Title VII and the ELCRA, which included but was not limited to:

     a.   Attempting to force ANDERSON to sign an agreement stating she was satisfied with PIRATES COVE's attempts to address Mr. Lang's conduct.

18

        b. Attempting to force ANDERSON to sign an agreement which prohibited her from discussing Mr. Lang's sexually inappropriate conduct.

        c. Terminating ANDERSON's employment.

127. As a direct and proximate result of PIRATES COVE's violations of Title VII and the ELCRA, ANDERSON has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish, mental and emotional distress, loss of professional reputation, and punitive damages, attorneys' fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

SOMMERS SCHWARTZ, P.C.

*/s/ Tad T. Roumayah*
Tad T. Roumayah (P74081)
Attorney for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

Dated:      September 8, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**RAQUEL ANDERSON,**

       Plaintiff,

                                      Case No.

v.                                      Hon.

**NREG US HOLDINGS, LTD**
**d/b/a PIRATES COVE SELF STORAGE,**

       Defendant.

_____/

SOMMERS SCHWARTZ, P.C.
Tad T. Roumayah (P74081)
Nathan A. Robbins (P87794)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
troumayah@sommerspc.com
nrobbins@sommerspc.com

_____/

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Raquel Anderson, by and through her attorneys, Sommers Schwartz, P.C., and hereby demand a trial by jury relative to the above matter.

                                  SOMMERS SCHWARTZ, P.C.
                                  */s/ Tad T. Roumayah*
                                  Tad T. Roumayah (P74081)
                                  Attorney for Plaintiff
                                  One Towne Square, Suite 1700
                                  Southfield, Michigan 48076
Dated:      September 8, 2025        (248) 355-0300

1